IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TABATHA A. SORENSON,

                        Plaintiff,

     v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security
                      Defendant.

OPINION and ORDER

21-cv-559-wmc

---

Plaintiff Tabatha A. Sorenson seeks judicial review of a final decision of defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, which found that she was not disabled within the meaning of the Social Security Act. Sorenson contends that the administrative law judge (ALJ) who decided her claim of disability: (1) did not build a logical bridge between the evidence and the Residual Functional Capacity (RFC) in regard to her handling and fingering limitations; and (2) failed to give appropriate weight to the opinion of her treating physician, Dr. Thomas Joseph.[1] Because the ALJ's findings and conclusions were well-explained and supported by the record, the court will affirm the Commissioner's decision.

---

[1] In addition to these challenges, plaintiff contends that the decision denying benefits is invalid because Andrew Saul, the former Commissioner, was not appointed in accordance with Article II of the Constitution. This argument is based on an extension of the holding in the Supreme Court's decision in *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020). However, but this court has repeatedly rejected *Seila's* application to Social Security decisions. *See Schwechel v. Kijakazi*, No. 20-CV-700-WMC, 2022 WL 135022, at *5 (W.D. Wis. Jan. 14, 2022); *Kreibich v. Kijakazi*, No. 20-CV-1045-bbc, 2022 WL 538261, at *6 (W.D. Wis. Feb. 23, 2022) (collecting cases). Since plaintiff's argument here is no different, it, too, must be rejected for the same reasons provided in those earlier decisions, although plaintiff has preserved this argument for appeal.

BACKGROUND

Tabatha Sorenson protectively filed her Title II application for a period of disability and disability insurance benefits on June 4, 2019, and she filed a Title XVI application for supplemental security income the following day.  Sorenson claimed she had been disabled since January 1, 2014 due to several back issues that caused ongoing pain and carpal tunnel in her left hand.  (AR 45–48.)[2]  Sorenson also alleged mental health impairments, including anxiety and depression.  (AR 50.)

After the local disability agency denied her claim initially and on reconsideration, Sorenson requested an administrative hearing, which was held via telephone on October 7, 2020, before ALJ Laura Chess.  (AR 14).  Sorenson testified at the hearing that: she had back pain that ran down her legs; she experienced tingling and numbness in her legs; and she felt pain when standing.  (AR 52-53.)  Sorenson also testified that she could only sit in one position for about 20 minutes before having to reposition herself.  (AR 54.)

In a March 2021 decision, the ALJ found Sorenson not disabled.  (AR 14–29.)  The ALJ found Sorenson had the following severe impairments: degenerative changes of the cervical and thoracic spine; cervical myofascial pain syndrome; degenerative disc disease of the lumbar and lumbosacral spine with sciatica; scoliosis; anxiety; PTSD; adjustment disorder; and depression.  (AR 18.)  Despite these severe impairments, the ALJ found that Sorenson still had a residual functional capacity ("RFC") to perform sedentary work with the following, additional limitations:

---

[2] "AR" cites in this opinion are to the pages of the administrative record located at Dkt. #7.

- lift and/or carry 10 pounds occasionally and less than 10 pounds frequently;
- stand and/or walk for 4 hours and sit for 6 hours in an 8-hour workday;
- never climb ladders/ropes/scaffolds, crouch or crawl;
- occasionally climb ramps and stairs, stoop, kneel, and balance as defined by the Selected Characteristics of Occupations (SCOO);
- occasional reaching overhead with both upper extremities;
- perform frequent handling and fingering with the bilateral upper extremities;
- never work at unprotected heights or in the vicinity of uncovered, unguarded moving machinery; and
- remembering and carrying out only simple instruction.

(AR 21.)  The ALJ concluded she was not disabled because a vocational expert testified that Sorenson could perform jobs with this RFC that existed in significant numbers in the national economy, including office clerk, receptionist, and order clerk.  (AR 28.)


OPINION

The principal question before this court is whether the ALJ's decision contained "sufficient evidence to support the agency's factual determinations."  *Biestek v. Beryyhill*, 139 S. Ct. 1148, 1154 (2019).  This standard requires "relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  Reviewing courts may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination."  *Reynolds v. Kijakazi,* 25 F.4th 470, 473 (7th Cir. 2022).  "Rather, this court asks whether the ALJ's decision "reflects an adequate logical bridge from the evidence to the conclusions."  *Id.* (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)).  As noted above, plaintiff contends that the ALJ's decision was not supported by substantial evidence because: (1) the ALJ did not give adequate weight to Dr. Joseph's medical opinion; and (2) the ALJ's handling and fingering limitation was unsupported by sufficient evidence.  The court addresses each of these arguments below.

I.       **Medical Opinion of Dr. Thomas Joseph**

Plaintiff started seeing Dr. Thomas Joseph in 2012, after being referred to him by her primary care physician for evaluation and treatment of low back and bilateral leg pain. Dr. Joseph specializes in physical medicine, and he recommended that plaintiff be limited to light work with severe walking, sitting, and driving restrictions. (AR 24, 2354.) Joseph opined that plaintiff could: only walk or stand for 16 minutes maximum; drive for 1 hour and sit for 45 minutes with positional changes every 20–30 minutes. He also indicated that plaintiff could: lift and carry 20 pounds; push and pull less than 25 pounds; and use her hands for single grasping and fine manipulation. (*Id.*) The ALJ found Dr. Joseph's opinion only partially persuasive, agreeing that plaintiff had exertional limitations, but not to the extent of Dr. Joseph's opinion. The ALJ also found that the record did not support Joseph's assessment regarding Sorenson's limitations in sitting, standing, walking or driving.

In assessing medical opinion evidence, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a). Rather, the ALJ is to consider the following factors when determining the proper weight to apply to the opinion or prior administrative finding: (1) supportability; (2) consistency; (3) the relationship with the claimant, including the length, purpose, and extent of the treatment relationship, the frequency of examinations, and the examining relationship; (4) specialization; and (5) other factors brought to the attention of the Commissioner. 20 C.F.R. § 416.920c(c). However, while the ALJ must consider all

4

of these factors, she needs only to address supportability and consistency specifically. *Id.* § 416.920c(b). However, when multiple medical opinions or prior administrative medical findings about the same issue conflict but are equally well-supported, the ALJ must articulate how she considered the other most persuasive factors. § 416.920c(b)(3). Finally, if supported by substantial evidence, the court must affirm the ALJ's assignment of weight to various medical opinions, *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021); it cannot reweigh the evidence or substitute its judgment for the ALJ's. *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir, 2013).

Here, plaintiff argues that the ALJ's assessment of Dr. Joseph's opinions is erroneous for two reasons. *First*, she says the ALJ erred in finding that Dr. Joseph's opinion had "no supporting basis." As plaintiff's medical records show, Dr. Joseph conducted numerous tests on her, including a range of motion test, facet compression test, Lewin-Gaenslen test, and palpitations that displayed tenderness and confirmed plaintiff was experiencing pain. (AR 2354.) However, plaintiff does not explain how these tests support the severe limitations that Dr. Joseph assessed. For example, Dr. Joseph's limited testing neither clearly supports his opinion that plaintiff needed to change positions every 20 to 30 minutes, nor that she was capable of sitting only a maximum of 45 minutes, particularly where the same treatment notes stated that plaintiff had a negative straight leg test, was able to tandem walk, and had normal gait, posture, strength, reflexes, sensation and muscle tone. (AR 2353–54.) In other words, Dr. Joseph did not support his opinion with an explanation, unlike the state agency medical consultants whom the ALJ found to be more persuasive. (AR 105–106, 132–133, 2354.)

In addition, the ALJ found that Dr. Joseph's opinion regarding the standing, walking, changing positions, and driving limitations were inconsistent with plaintiff's daily activities, including grocery shopping, yard work, stacking wood, sweeping, and mopping. (AR 26.)  And contrary to plaintiff's assertions, it is "entirely permissible to examine . . . [the] claimant's daily activities[ ] to assess whether 'testimony about the effects of [her] impairments [were] credible or exaggerated.'"  *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016) (quoting *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016)).

*Second*, plaintiff argues that the ALJ failed to articulate how she considered other relevant factors in assessing Dr. Joseph's opinion, including his relationship with the claimant and specialization.  Plaintiff argues that because the ALJ found opinions of the state agency consulting physicians to be more persuasive, she was required to "articulate how [the ALJ] considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in your determination or decision."  20 C.F.R. § 416.920c(b)(3).

However, plaintiff has misinterpreted the rules and regulations the ALJ is bound to follow.  Rule 20 C.F.R. § 416.920c(b)(3) is only triggered when two or more *well-supported* medical opinions conflict on the same issue.  The ALJ specifically articulated what aspects of each medical opinion she found persuasive.  (AR 23–26.)   There is no conflict of well-supported opinions on the same issue; nor is the ALJ required to specifically articulate how she considered each doctor's relationship with plaintiff, specialization, and other factors. Moreover, the ALJ *did* note Dr. Joseph's treatment relationship with plaintiff (AR 24), as

well as Dr. Joseph's specialty as a physiatrist (AR 25).  Plaintiff has not identified any error in the ALJ's discussion.

Thus, the ALJ complied with 20 C.F.R. § 416.920c by explaining her findings adequately regarding both the consistency and supportability of the medical opinions, and because no well-supported medical opinion conflicted on the same issue, the ALJ was not required to do more.  *Bakke v, Kijakazi,* 62 F.4th 1061, n. 4 (7th Cir. 2023) (ALJ need not explain how he accounted for treating relationship under the regulation); *Kaczmarek v. Kijakazi*, No. 21-CV-176-JDP, 2023 WL 2552837, at *3 (W.D. Wis. Mar. 17, 2023) (20 C.F.R. § 416.920c imposes only minimal articulation requirement on ALJs).

## II.    Handling and Fingering

The ALJ also found that plaintiff could "perform frequent handling and fingering with the bilateral upper extremities." (AR 21.)  Plaintiff argues that the ALJ did not explain the basis for finding this manipulative limitation, and Dr. Joseph's opinion supported more significant manipulative limitations than the opinions of the state agency consultants, who assessed no manipulative limitations.  However, plaintiff is mistaken:  Dr. Joseph actually opined that plaintiff could perform single grasping and fine manipulation.  (AR 24, 2354.)  Thus, Dr. Joseph agreed with the state agency consultants regarding plaintiff's fine motor skills.

Plaintiff is also incorrect in asserting that the ALJ failed to make factual findings regarding manipulative limitations, as the ALJ referenced plaintiff's ability to handle and finger objects multiple times in her written decision.  The ALJ first acknowledged that

plaintiff alleged having carpal tunnel syndrome.  However, she concluded it was not a medically determinable impairment because it was not supported by a medically acceptable clinical or laboratory diagnostic test.  (AR 19.)  Similarly, while plaintiff had a positive Phalen's and Tinel's test, she received normal results from her electroneuromyography. (AR 517–18, 2350.)  Thus, there is no medically determinable evidence of carpal tunnel syndrome or an ulnar neuropathy, which both cause numbness in the hand (*id.*), and plaintiff does not expressly challenge the ALJ's conclusion about carpal tunnel syndrome.

As for the ALJ's consideration of plaintiff's daily activities in relation to her reported difficulties using her hands, the ALJ noted that plaintiff could complete legible, coherent handwritten forms, cook daily meals, care for pets, drive, do laundry, and sweep.  (AR 26.) Each of those activities requires significant hand use.  *See Frye v. Saul*, No. 18-cv-550-wmc, 2020 WL 255815, *7 (W.D. Wis. Jan. 17, 2020) ("driving, cooking small meals, and household chores such as laundry and sweeping, can be fairly construed as inconsistent with her claim of disabling right-hand impairment.").  The ALJ also noted that plaintiff's husband did not report that plaintiff had any difficulty using her hands.  (AR 26.)  Finally, plaintiff does not identify any medical evidence overlooked by the ALJ that would support more severe restrictions.  *See McKinzey v. Astrue,* 641 F.3d 884, 892 (7th Cir. 2011) (holding that the court will not remand a case to the ALJ for further specification when the court is convinced that the ALJ will reach the same result).

Based on all of this evidence, the ALJ reasonably concluded that plaintiff did not have carpal tunnel syndrome or an ulnar neuropathy, but rather had a slight handling and fingering limitation.  The ALJ also adequately explained why she believed plaintiff's

complaints about her hands were inconsistent with the record, citing both her daily activities and clinical studies.  Accordingly, plaintiff has identified no basis for remanding this case because the ALJ's decision was supported by sufficient evidence.

ORDER

IT IS ORDERED that the decision of defendant Kilolo Kijakazi, Acting Commissioner of Social Security, is AFFRIMED, and plaintiff Tabatha A. Sorenson's appeal is DISMISSED. The clerk of the court is directed to enter judgment in favor of defendant and close this case.

Entered this 25th of July, 2023.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge